The People of the State of Illinois, Plaintiff-Appellee, *v.* Steven Heller, Defendant-Appellant.

(No. 70–54; ▮▮▮▮▮▮▮▮▮

Third District—March 9, 1971.

Theodore Gottfried, of Defender Project, of Ottawa, for appellant.

Bernard Oltman, State's Attorney, of Pekin, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant was indicted and tried by a jury in Tazewell County for armed robbery and robbery. He was found guilty of robbery and sentenced to the penitentiary for a term of four to twelve years. The charge arises out of an incident that occurred on October 21, 1969, in a tavern in Creve Coeur, Illinois, known as the Harbor Lights. The complaining witness, Peter Horvath, was tending bar on the night in question in the Harbor Lights, the same being a tavern, pool hall and restaurant establishment owned by Horvath's mother. He testified that early in the morning at approximately 2:30 or 3:00 A.M., two men came into the establishment, played three games of pool, ordered and ate "three chili dogs" taking them approximately twenty to twenty-five minutes. No one else was in the establishment. He identified defendant as one of the two men. He stated that defendant's accomplice gave him a $10.00 bill to change and while he was looking for change the accomplice struck him on the right temple knocking him down. He testified that defendant and his accomplice then took money from the cash register in the amount of approximately $100.00 and the defendant removed a gun from a small drawer near the register, the gun apparently being the property of Horvath or his mother. The defendant then pointed the gun at him and said twice that he would kill him. The two men then left the store.

Defendant complains that the lower court committed reversible error

when it failed to inquire of the jury as to whether they had read a newspaper article. After the jury had been selected but prior to the start of the trial counsel for defendant informed the court of an article that appeared in a Peoria newspaper, a newspaper circulated in Tazewell County that morning, that counsel felt was prejudicial to the defendant. The abstract shows the following conversation took place outside of the jury:

"MR. HAYES: My client has informed me that an article appeared in this morning's Peoria Journal Star concerning his plea of guilty to the charge of bank robbery in the Federal Court of Peoria. Therefore, I move that the court inquire of the jury if they saw the article and if anyone did see it to admonish them to disregard it.

\* \* \*

"THE COURT: The Court has seen the article and will before the jury leaves today admonish them again not to read any articles and if some information has happened to have been read by them or passed on to them in any way they should disregard it. The motion of the defendant to inquire of them will be denied. \* \* \*".

The abstract does not contain the article and it does not appear from the foregoing that it was presented to the lower court. The record is silent as to the exact language contained in the article.

The defendant contends that the trial court was required to make inquiry of the jury regarding the article, citing *People v. Cox,* 74 Ill.App.2d 342, 220 N.E.2d 7, and *People v. Robertson,* 74 Ill. App.2d 360, 220 N.E.2d 5. In both cases the news article was made a part of the record. In both cases the article referred to the case being tried as opposed to the article in this case where the article makes reference to another charge, another plea in another county.

■■ The question of whether a jury should be interrogated with respect to a given newspaper article rests in the exercise of the sound discretion of the trial judge. It is the improper exercise of that discretion by the trial court that is error, not the refusal to interrogate the jury. (*People v. Murawski,* 394 Ill. 236, 68 N.E.2d 272; *People v. Cox, supra.*) As stated in the latter case:

"This does not imply that every newspaper article published during trial requires an interrogation of the jury. Its nature, content and prejudicial effect, if any, is to be resolved by the trial court in an exercise of sound discretion. The article must be produced and made a part of the record and its prejudicial effect, if any, first carefully explored by the trial court."

The court also stated:

"It is clear that the determination to be made by the trial court rests not alone on what the jury says on interrogation but the nature of the

published material together with all other facts and circumstances in the record."

■■ Failure of defendant to either produce the article or if done to abstract the same prevents this court from ascertaining if the lower court improperly exercised its discretion. It is noted that the trial judge acknowledged reading the article and we must assume that the court ruled properly.

Defendant next contends the court erred in failing to direct a verdict to the charge of armed robbery. The contention here is that the failure to so direct a verdict, acting together with an erroneous instruction given by the court and inflammatory remarks made by the States Attorney, prejudiced the defendant and caused the jury to reach a compromise verdict. The instructions given by the court will be commented on later in this opinion.

The testimony establishes that the gun did not come into play until and at the same time the money was taken from the cash register. Defendant contends the gun was no more than a part of the property taken. This is not accurate for the testimony shows the gun was pointed at Horvath and that the defendant threatened to kill him. Defendant nonetheless claims, not without merit, that the weapon was not used in the commission of the crime nor in perfecting an escape. The substance of the argument is that despite the obvious intimidation of Horvath with the gun and despite the use of the gun while the robbery was in effect, this should not change the crime from robbery to armed robbery.

The question immediately arises as to whether the act of using the gun cannot be considered along with the robbery as a continuous series of events constituting a single occurrence. *People v. Watson*, 110 Ill.App.2d 343, 249 N.E.2d 293.

■■ To sustain a conviction for robbery the force or threat of force must proceed or be contemporaneous with the taking of the property, *People v. Jones*, 290 Ill. 603, 125 N.E. 256, yet it is acknowledged by the authorities that the taking of property may be peaceful but the departure with the same may be forceful. In *People v. Jones, supra,* defendant apparently lifted the wallet of the complaining witness, who was intoxicated. The latter then accused the defendant of taking his wallet and defendant responded by striking him and knocking him out. The court there said:

"There was no evidence of a struggle to retain possession of the pocketbook, but only an accusation of the theft after it occured, which the plaintiff in error resented by assaulting the accuser."

In 58 A.L.R. 656, that authority says:

"Though the decisions are not without conflict, the general rule requires that, in the offense of robbery, force or putting in fear be employed

before, or at the time of, the taking of property, and does not permit a charge of robbery to be sustained by showing a retention of property, or an attempt to escape, by force or putting in fear." Citing *People v. Jones, supra.*

No case directly in point has been suggested by either party and *People v. Jones* cannot, we believe, be quoted as placing Illinois within that general rule.

In *People v. Brown,* 76 Ill.App.2d 362, 222 N.E.2d 227, a case involving a simple robbery, the court held that force exerted after the taking was sufficient to sustain the robbery charge. The complaining witness was asleep in an elevated train in the city of Chicago. He awoke and saw a man with his wallet taking money from it. He reached for his wallet and was struck by a second man and knocked back into his seat. The three men, all accomplices, left the train with his money. The court in denying defendant's contention that robbery had not been proven stated:

"The series of events — the taking of the wallet, the attempt to recover it by Dickerson, and the striking of Dickerson   *   *   *   — constituted a single incident or occurrence or the *"res gestae"* of the crime."

In *People v. Chambliss,* 69 Ill.App.2d 459, 217 N.E.2d 422, the force took place after the taking of a wallet and after the complaining witness chased the thief after he had felt someone take his wallet from his pocket. The court quotes with approval from 46 Am. Jur., Robbery, Sec. 21, where it is stated:

"Thus, if a struggle *immediately ensues* to keep possession of the property and the thief overcomes the resistance   *   *   *   the violence is sufficient to constitute the act a robbery."

The court there referred to the force applied after the taking as the *"res gestae of the crime."*

■■   We feel that the use of a dangerous weapon at any point of a robbery, so long as it can reasonably be said to be a part of a single occurrence or incident—or put another way, a part of the *"res gestae of the crime",* will constitute armed robbery.

■■   In the case at bar we believe there was sufficient evidence to go to the jury on the question of armed robbery. So long as the assailant wielded a gun it is impossible to say what further resistance the victim may have put forth. No error was committed by the lower court in permitting the jury to consider the armed robbery count and certainly under these circumstances the defendant was not prejudiced.

Defendant next contends he was prejudiced by the giving of certain instructions. The court gave four instructions relating to the guilt or innocence of the defendant. One was an instruction of guilty of armed robbery, one for not guilty of armed robbery, one for guilty of robbery, and

one for not guilty of robbery. Defendant contends this misled the jury in some way and compelled them to compromise their verdict. The instructions are contrary to directions contained in Illinois Pattern Instructions, Criminal. That authority recommends in cases of this nature the giving of three instructions, one for not guilty and one each for guilty of each crime. His argument is predicated on the contention that the court should have directed a verdict in his favor on the armed robbery instruction. Inasmuch as we have already overruled his contention in that regard, his claim of prejudice here is without merit. Nothing contained in the instructions in any way suggests prejudice.

Defendant next complains that the trial court erred in allowing the State's witness, officer Roland Doss, to testify over defendant's objection that his name was not furnished as a witness by the State. Discretion imposes in the trial court to allow an unlisted witness to testify. (*People v. Snell*, 74 Ill.App.2d 12, 219 N.E.2d 554; *People v. Kenzik*, 22 Ill.2d 567, 177 N.E.2d 162.) Only when it appears that defendant has been surprised or prejudiced will the trial court's ruling be overturned and the burden of establishing surprise is on the defendant. (*People v. Quevreaux*, 407 Ill. 176, 95 N.E.2d 62; *People v. Weisberg*, 396 Ill. 412, 71 N.E.2d 671.) Nothing in the record indicates to us that the State withheld "important testimony at its command." (*People v. Crump*, 5 Ill.2d 251, 125 N.E.2d 615.) There apparently is no dispute that the witness's name was not furnished, in fact it does not appear that defendant was furnished a list of witnesses at all, although requested by him before the trial. The record fails to disclose such a list was furnished, although the discussion between the court, State's Attorney, and defendant's attorney, abstracted in full, indicates the State may have furnished such a list. Defendant made no effort to show surprise and in fact during the discussion following defendant's motion to exclude, defendant's attorney in response to the court's suggestion that he might or might not be taken by surprise stated, "I am not claiming surprise."

"When the calling of other witnesses occasions no surprise and does not make any other preparation necessary to the defense, it has been said, there can be no good reason for witholding material or important testimony for the prosecution." *People v. O'Hara*, 332 Ill. 436, 163 N.E. 804.

It is noted that the testimony of officer Doss was nothing more than repetitious of the testimony given by an officer who testified prior to Doss and in fact was less extensive.

Finally on this subject, defendant made no request to talk to the witness prior to his giving testimony. The court, obviously influenced by the statement of defendant's attorney stating he was not claiming surprise, did not offer to permit counsel to interview the witness. Under these

circumstances permitting the witness to testify cannot be regarded as prejudicial to the defendant.

The defendant next contends that substantial prejudicial eorror occurred when detailed testimony as to the extent of injuries sustained by Horvath was repeatedly permitted by witnesses for the State. Along the same line he complains that the States Attorney's final argument to the jury dwelled on those injuries, citing *People v. Nickolopoulos*, 25 Ill.2d 45, 185 N.E.2d 209. Defendant in that case was charged with assault with intent to commit murder. Over defendant's objection testimony was allowed regarding paralysis of the victim's leg and internal wounds sustained by him; that he was fed intravenously at the hospital and had tubes in his nose; that blood was observed on the floor under the victim's body and on the stretcher, all the result of the shooting of the defendant. The Supreme Court noted that the question involved was not the nature and seriousness of the injury inflicted, but the reckless character and manner of the assault.

■■ In *People v. Jenko*, 410 Ill. 478, 102 N.E.2d 783, the court held that a party cannot have competent evidence excluded merely because it might arouse feelings of horror or indignation in the jury. By the same token such evidence should not be permitted if it serves no purpose other than to arouse the passions of the jury.

■■ From a reading of the record we cannot say the testimony had such impact on the jury as to warrant reversal. Force or intimidation is the gist of the action of robbery, *People v. Stathas*, 356 Ill. 313, 190 N.E. 661, and the extent of the injury may be shown to prove such force, providing the State does not go beyond that which is reasonable to establish force. The record in this case does not bear out defendant's contention on this point.

■■ Defendant's last contention is that the court committed prejudicial error in permitting a police officer to testify that Horvath identified defendant from a photograph shown to Horvath some days after the incident, citing *People v. Krejewski*, 332 Ill. 120, 163 N.E. 438, and *People v. Lukoszus*, 242 Ill. 101, 89 N.E. 749. It must be noted that the court was not given the opportunity to exclude the evidence for defendant neither objected to the questions put the witness nor was there a request that the jury be instructed to disregard it. (*People v. Solomon*, 24 Ill.2d 586, 182 N.E.2d 736.) It is noted that the matter of photographic identification of the defendant by Horvath was first brought up by the defendant in his cross examination of Horvath. Defendant attempted to cast doubt on the identification of the accused by Horvath and in the process opened the door to the testimony illicited by the State. (*People v. Denham*, 41 Ill.2d 1, 241 N.E.2d 415.) Defendant cannot question the competency of

this evidence for the first time on review. *People v. Lucania,* 360 Ill. 150, 195 N.E. 640; *People v. Trefonas,* 9 Ill.2d 92, 136 N.E.2d 817; *People v. Solomon, supra.*

For the reasons given above the judgment of the trial court is hereby affirmed.

Judgment affimed.

ALLOY, P. J., and STOUDER, J., concur.